UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LEANNE W.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-01615-MJD-SEB |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Leeanne W. requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying her Social Security application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). See 42 U.S.C. § 423(d). For the reasons set forth below, the Court **REVERSES** and **REMANDS** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB on April 25, 2017, alleging an onset of disability as of September 30, 2013. [Dkt. 18-2 at 16.] Claimant's application was denied initially and upon

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the Social Security Administration on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the Social Security Administration.

reconsideration, and a hearing was held before Administrative Law Judge Shelette Veal ("ALJ") on March 28, 2019. *Id.* On April 15, 2019, ALJ Veal issued her determination that Claimant was not disabled. *Id.* The Appeals Council then denied Claimant's request for review on April 9, 2020. *Id.* at 2. Claimant timely filed her Complaint on June 11, 2020, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and her conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of September 30, 2013. [Dkt. 18-2 at 18.] At step two, the ALJ found that Claimant had the following severe impairments: "fibromyalgia, migraines, asthma, obesity, depression, anxiety, and history of alcoholism (20 CFR 404.1520(c))." *Id.* At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 18-19. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except occasionally lift up to twenty pounds, and frequently lift or carry up to ten pounds. She can stand or walk for six hours and sit for six hours per eight-hour workday. She can occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds. She can occasionally balance on level surfaces, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to fumes, odors, dust, gases, vibration, and noise. She can perform unskilled to semiskilled work and she has the mental

> capacity to understand, remember, and follow noncomplex instructions. She is
> able to sustain attention and concentration skills sufficient to carry out work-like
> tasks with reasonable pace and persistence.

*Id.* at 20.

At step four, the ALJ found that Claimant was not able to perform her past relevant work during the relevant time period. *Id*. at 23-24. At step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id*. at 24. For example, the VE testified that Claimant would be able to work as a Retail Marker, a Routing Clerk, or an Office Helper. Accordingly, the ALJ concluded Claimant was not disabled. *Id.* at 25.

## IV. Discussion

Claimant advances two arguments for reversing the ALJ's decision. First, she contends that the ALJ failed to properly weigh the opinion of her treating physician. Next, she argues that the ALJ erred by failing to account for Claimant's moderate limitations in concentration, persistence, and pace in making her RFC assessment and in posing hypothetical questions to the VE. These arguments are addressed, in turn, below.

### A. Treating Physician's Opinion

Claimant argues that the ALJ improperly discounted the opinion of her treating osteopath, Dr. Courtney McNeill. [Dkt. 18-2 at 23.] Dr. McNeill completed a "Physical Residual Functional Capacity Questionnaire" on which she opined that Claimant should be limited to less than sedentary exertion and that Claimant would be capable of low-stress jobs but would likely be absent more than four days per month. [Dkt. 18-7 at 580-84.] She wrote that Claimant would have "intermittent and unpredictable 'bad days'" and "diffuse aching sharp pain

4

daily, worsened by weather, physical activity, stress," and checked a box indicating that Claimant's pain and symptoms would "frequently" interfere with attention and concentration. *Id.*

The ALJ gave "little weight" to Dr. McNeill's opinion. [Dkt. 18-2 at 23.] The ALJ found that Dr. McNeill's "treatment notes showing significant improvement with osteopathic manipulation [] do not support her opinion" and that her opinion was inconsistent with other medical evidence showing "essentially normal" exams. *Id.* These are not sufficient reasons to discount Dr. McNeill's opinion, and, in any event, they are not supported by the record.

Because Claimant advanced this claim after March 27, 2017, the applicable law no longer requires the ALJ to give special weight to the opinion of Claimant's treating physician. *See* 20 C.F.R. § 404.1520c. Instead, all medical opinions—from treating providers, Social Security's consultative examiners, and independent medical examiners—are evaluated on an equal basis for "persuasiveness." 20 C.F.R. § 404.1520c(b). ALJs are instructed to evaluate all medical opinions using factors including whether the opinion is supported by objective medical evidence; the opinion's consistency with other evidence; the physician's relationship with the patient, including the length, frequency, purpose, and extent of treatment; and the physician's specialization. 20 C.F.R. § 404.1520c(c). ALJs must articulate how persuasive they find each medical opinion in their decisions. 20 C.F.R. § 404.1520c(b).

The most important factors ALJs will use in determining the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Opinions that are supported by and consistent with objective medical evidence will be most persuasive. 20 C.F.R. § 404.1520c(c)(1)-(2). Here, Dr. McNeill's opinion was consistent with Claimant's exams, despite the ALJ's assertion to the contrary. Dr. McNeill and the state consultants noted that Claimant's symptoms improve with regular osteopathic manipulation treatment ("OMT"), which

5

she had been receiving every two to three weeks. Additionally, each of these medical opinions noted the same chronic pain and soreness in Claimant's neck, shoulders, chest, back, epicondyles, thighs, and knees as well as somatic dysfunction in her cervical, thoracic, and lumbar regions of the spine, which is inconsistent with the ALJ's characterizations of Claimant's exams as "essentially normal." [Dkt. 18-2 at 21; Dkt. 18-7 at 492, 497, 502, 508, 514, 519, 525, 530, 537, 542, 549, 554, 560, 566, 572, 578.]

The ALJ cites exhibits 2F, 6F, 14F, and 16F[3] to support her determination that Claimant's exams are "essentially normal," but these exhibits do not support that conclusion. [Dkt. 18-7 at 64-75, 131-191, 460-467, 486-578.] Exhibit 6F consists of visit notes from Claimant's family medicine physician, Dr. Erhard Bell, who treated her between 2013 and 2016 for various acute conditions such as upper respiratory infections, nausea, sinusitis, and bronchitis, as well as chronic migraines, for which she was referred to a neurologist. The physician's notes reflect that his focus was on the particular acute issue for which Claimant was being seen. *Id.* at 131-91. Exhibit 2F consists of records from the neurologist whom Claimant saw, apparently once, for her migraines, and who referred her for a sleep test, which was negative for sleep apnea. *Id.* at 64-75. Exhibit 14F consists of Dr. Bell's notes from May 2017 through November 2017. Dr. Bell again saw her for acute issues; she also had one visit for fibromyalgia, in November 2017, at which Dr. Bell noted worsening fibromyalgia pain that Claimant described as "8-10/10." *Id.* at 460-467. The ALJ fails to explain what sort of relevant abnormal findings she would expect

---

[3] The ALJ cited only exhibits 2F, 6F, 14F, and 16F to support her conclusion that Claimant's exams were "essentially normal." Under the Chenery doctrine, the Commissioner cannot defend the ALJ's decision using evidence she did not rely on in making her decision. *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943). Therefore, the Commissioner's references in her brief to several other exhibits that she alleges contain "normal" findings are irrelevant.

6

these records to reflect given the nature of the treatment to which they relate. Finally, Exhibit 16F consists of treatment notes from Dr. McNeill dated November 2017 through October 2018. These notes consistently note symptoms of fibromyalgia, for which Dr. McNeill provided treatment, as well as migraines and depression. *Id.* at 486-578. Certainly in addition to the problems noted by Dr. McNeill at each visit, many "normal" findings were also noted, as the medical record for each visit reviews a broad array of medical systems and Claimant did not have issues with many of them. However, the ALJ does not point to any abnormal findings that, given Claimant's diagnoses, should have appeared in these records but did not. Additionally, "normal" findings that are unrelated to the impairments at issue are irrelevant. *Hardy v. Berryhill*, 908 F.3d 309, 312 (7th Cir. 2018). Therefore, the existence of these unrelated normal findings in the four cited exhibits does not support the ALJ's decision to discount Dr. McNeill's opinion.

Further, it is unclear what reasons the ALJ used for categorizing Claimant's exams as "essentially normal." Dr. McNeill consistently observed "somatic dysfunction" of the Claimant's cervical, thoracic, and lumbar regions of the spine. [Dkt. 18-7 at 492, 497, 502, 508, 514, 519, 525, 530, 537, 542, 549, 554, 560, 566, 572, 578.] She also noted that Claimant showed tenderness and soft tissue discomfort in her neck, shoulders, chest, back, epicondyles, thighs, and knees with 18/18 tender points and painful motion on exams. [Dkt. 18-7 at 19, 73, 99, 116-17, 461.] The ALJ failed to confront these facts in categorizing Claimant's exams as "essentially normal," and the ALJ's classification of Claimant's exams as "essentially normal" is simply not supported by the record.

In addition, the ALJ's conclusion that Dr. McNeill's treatment notes are inconsistent with her opinion is illogical. The ALJ is correct that Claimant significantly improved with OMT.

7

However, Claimant needs "frequent OMT sessions requiring doctor's visits" to maintain this improvement. [Dkt. 18-7 at 580.] Once, Claimant went a full month without an OMT session, which caused a significant fibromyalgia flare. *Id.* at 323. Given this, Dr. McNeill's opinion that Claimant would be absent from work multiple days a month is, in fact, supported by her treatment notes describing the effectiveness of regular OMT, because Claimant likely would be absent from work to receive OMT.

Finally, it is unclear what medical opinion the ALJ relied on in making her decision, and an ALJ is not permitted to "play doctor." *Browning v. Colvin*, 755 F.3d 702, 705 (7th Cir. 2014). Because "there is always a danger when lawyers and judges attempt to interpret medical reports," ALJs must rely on objective medical evidence and opinions for their decisions. *Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016). In this case, it is unclear what, if any, support the ALJ had for characterizing Claimant's exams as "essentially normal." She gave little weight to the opinion of the treating physician and only partial weight to the opinions of the State consultants. [Dkt. 18-2 at 23]. She did not point to any other medical evidence or opinions she gave significant weight to in determining Claimant's physical limitations. Therefore, there is no evidence to indicate the ALJ's assessment was based on anything other than her own unqualified medical opinion, which is not a sufficient basis. Relying on her own judgment rather than the opinions of any of the physicians is the ALJ again impermissibly "playing doctor," which is a reversible error.

The reasons articulated by the ALJ for rejecting the opinion of Claimant's treating physician are not supported by substantial evidence. Remand is required to correct this error.

### B. Moderate Limitations in Concentration, Persistence, and Pace

Claimant contends that the ALJ's RFC assessment and questions to the VE did not properly describe the moderate concentration, persistence, and pace limitations the ALJ found Claimant

had. Claimant also argues that the ALJ failed to account for the State psychologists' more restrictive findings in the check-box section of their analyses, and, instead, the ALJ relied solely on the psychologists' narrative opinions in making her RFC determination.

The ALJ found that Claimant had moderate limitations in "understanding, remembering, or applying information" and "concentrating, persisting, or maintaining pace." [Dkt. 18-2 at 19-20.] According to the regulations, this means Claimant's functioning in each of these areas "independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00(F)(2)(c). In her RFC assessment, the ALJ then determined: "She can perform unskilled to semiskilled work[4] and she has the mental capacity to understand, remember, and follow noncomplex instructions. She is able to sustain attention and concentration skills sufficient to carry out work-like tasks with reasonable pace and persistence." *Id.*

In making this determination, the ALJ said she relied on and gave "significant weight" to two State psychological consultants. *Id.* at 23. Dr. Horton and Dr. Kennedy stated on their "Mental Residual Functional Capacity Assessments" that Claimant was moderately limited in her ability to "understand and remember detailed instructions," "carry out detailed instructions," "maintain attention and concentration for extended periods," and "respond appropriately to changes in the work setting." [Dkt. 18-3 at 9-11, 23-24.] Based on these findings, both doctors

---

[4] The ALJ determined in her RFC assessment that Claimant could perform "unskilled to semi-skilled work," despite relying on the State psychologists' opinions that Claimant could only perform "unskilled work." [Dkt. 18-2 at 20.] However, Claimant did not raise this argument, nor is it a reversible error. All of the jobs the VE found the Claimant could perform are unskilled work, so the ALJ's addition of "semi-skilled" in the RFC assessment was irrelevant. [Dkt. 18-2 at 25.]

9

opined in the narrative portion of their assessment forms that Claimant could perform "unskilled work within physical limitations." *Id.*

Claimant relies on cases such as *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015), *Winsted v. Berryhill*, 923 F.3d 472 (7th Cir. 2019), and *DeCamp v. Berryhill,* 916 F.3d 676 (7th Cir. 2019), to argue that the Seventh Circuit has held that an ALJ attempting to account for moderate limitations in concentration, persistence, and pace by limiting claimants to unskilled work is insufficient. [Dkt. 20 at 11-12.] Under that line of cases, the ALJ's RFC assessment and hypothetical question to the VE that Claimant "can perform unskilled to semiskilled work and . . . has the mental capacity to understand, remember, and follow noncomplex instructions . . . [and] is able to sustain attention and concentration skills sufficient to carry out work-like tasks with reasonable pace and persistence" may not be sufficient to account for each of the four check-box limitations the State psychologists identified. [Dkt. 18-2 at 20.] This description takes into account two of the four check-box limitations: that Claimant has moderate limitations in her ability to "understand and remember detailed instructions" and "carry out detailed instructions." [Dkt. 18-3 at 9-11, 23-24.] However, the cited cases suggest that this determination does not fully account for the psychologists' check-box findings that Claimant had moderate limitations in her ability to "maintain attention and concentration for extended periods."

However, several more recent Seventh Circuit cases addressing limitations in concentration, persistence, and pace have suggested that the type of RFC determination made in this case may be sufficient, as long as it accounts for Claimant's identified limitations. For example, the Seventh Circuit in *Recha v. Saul* held that ALJs have wide latitude in wording RFCs. *Recha v. Saul*, 843 Fed. Appx. 1 (7th Cir. 2021). In *Bruno v. Saul*, the Seventh Circuit held that while limiting claimants to simple tasks generally is not sufficient to account for

moderate limitations in concentration, persistence, and pace, it was sufficient in that case because that restriction fully accounted for the claimant's limitations as found by the ALJ and the opinions he relied on. *Bruno v. Saul*, 817 Fed. Appx. 238 (7th Cir. 2020). This new line of cases suggests that the ALJ's RFC determination here may have sufficiently accounted for Claimant's moderate limitations.

On remand, the ALJ should be sure to clearly articulate how her RFC assessment accounts for her own finding of moderate limitations in concentration, persistence, or pace. The ALJ also should specify in her hypothetical questions to the VE what exactly "reasonable pace" means, as it is unclear to the Court that a finding of moderate limitations in concentration, persistence, and pace is consistent with the ability to maintain a "reasonable pace." Finally, the ALJ must address the State psychological consultants' opinion that Claimant is moderately limited in her ability to "respond appropriately to changes in the work setting," and either account for that limitation in her RFC and hypothetical questions or explain why she is disregarding it.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated: 15 JUL 2021

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.